IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROBERT COOPER, #209-556 | : | |
| Plaintiff | : | |
| v. | : | CIVIL ACTION NO. AMD-06-287 |
| DWIGHT JOHNSON, et al. | : | |
| Defendants | : | |

MEMORANDUM

This is a consolidated pro se action under 42 U.S.C. § 1983 filed by Robert Cooper, an inmate at the Maryland Correctional Adjustment Center, seeking injunctive relief and damages. Defendants Warden Lehman Dotson, Dwight Johnson, Eric Jefferson, Timothy Bullock, Ashley Riley, Ali Crossland, and Ronald Orange (the state defendants) have filed a motion to dismiss or in the alternative for summary judgment.[1] Defendants Dr. Cherelle Reddick-Lane and Barbara Pendleton[2] (the medical defendants) have also filed a motion to dismiss or in the alternative for summary judgment. Plaintiff has responded to the dispositive motion filed by the state defendants. Defendants rely on materials beyond the scope of the complaint, and their motions shall be considered pursuant to Fed R. Civ. P. 56. No hearing is necessary. *See* Local Rule 105.6 (D. Md.2004). For the reasons set forth below, the court will grant defendants' motions for summary judgment and will enter judgment in favor of defendants and against plaintiff.

---

[1]Plaintiff subsequently sought to add 36 additional state defendants to this action. For reasons apparent herein, the claims against these corrections officials, had they been served as parties to this action, would also be denied for lack of merit.

[2]Barbara Pendleton is a medical records clerk. To the extent plaintiff might intend to fault Ms. Pendleton for allegedly failing to obtain records he that requested from his medical file, he has failed state a cognizable cause of action against her.

I. Claims Presented

    A. Medical Defendants

Plaintiff claims that he is receiving inadequate medical care. Specifically, he alleges that Dr. Reddick-Lane failed to order an x-ray of his shoulder, failed to properly manage his high blood pressure, and failed to properly respond to his sick call requests. He also objects to having his blood pressure taken with his arm at an angle.

    B. State Defendants

Plaintiff asserts that the state defendants' practice of handcuffing him from behind exacerbates a shoulder injury he allegedly sustained in July 2003, and will cause additional nerve damage. Cooper contends that medical records from the Maryland House of Correction- Annex restrict him from being handcuffing from behind. He further asserts that the restrictions were ordered by an orthopedic specialist. According to plaintiff, for the first 69 days after his transfer to MCAC, he was not handcuffed from the back.[3] *See id.*

In addition, plaintiff disputes the notice of infraction he received on January 15, 2006, after he refused to be handcuffed from behind during a cell search by Correctional Officers Crossland, Bullock, and Riley. Plaintiff acknowledges that he was placed in a three-piece restraint instead of handcuffed from behind so that the search could proceed.

II. Factual Background

---

[3] Plaintiff states in his opposition that he was cuffed from the front for 99 days until he was "manhandled" by prison officials on February 15, 2006. This incident was the subject of plaintiff's February 27, 2006, motion for a temporary restraining order. On March 3, 2006, the court denied the motion. The Fourth Circuit dismissed the interlocutory appeal for lack of jurisdiction on May 24, 2006. *See Cooper v. Johnson*, (4th Cir. 2006) (No. 96-6406). The February 15, 2006, incident involves claims separate from those considered in the instant case. Paper No. 9.

A.  Medical Defendants

The medical and state defendants have filed verified records in support of their dispositive pleadings.[4] Review of the records submitted by the medical defendants shows the following. On November 18, 2005, Dr. Reddick-Lane examined plaintiff for a routine follow-up of his hypertension (high blood pressure).  She continued his medications and ordered Tylenol for arthropathy (joint pain). Med. Ex. A  ¶ 5. On November 25, 2005, plaintiff submitted a sick call request stating that he need more Extra Strength Tylenol and complained he had only been given a two week prescription. Med. Ex. A  ¶ 5. Two days later, on November 27, 2005, plaintiff submitted an Informal Inmate Complaint requesting improvement in delivery of his medications. According to Dr. Reddick-Lane,  her review of plaintiff's Medication Administration Records (MARS) showed plaintiff "consistently received his medications as prescribed." Med. Ex. A  ¶ 7.

On December 10, 2005, plaintiff submitted a sick call request complaining he was not receiving his hypertension medicine in a timely matter. Med. Ex. A ¶ 6-7, Med. Ex. B pp. 4, 28, 35.  Plaintiff also submitted an Informal Inmate Complaint that Dr. Reddick-Lane did not increase his pain medication.  According to Reddick-Lane she "simply changed Cooper's Tylenor from 500 mg. two tablets per day to one tablet twice a day, to try to provide a more consistent level of pain relief." Med. Ex. A  ¶ 8, Med. Ex. B pp. 6-7, 28. On December 12, 1005, Cooper complained that the medication nurse had improperly administered his hypertension medicine. Subsequent investigation demonstrated that plaintiff had been given the proper medicine. Med. Ex. A ¶ 9, Med. Ex.  B pp. 8,

---

[4]Correctional Medical Services, Inc. (CMS) became the medical contractor at MCAC on July 1, 2005. Med. Ex. A  ¶ 4. Dr. Reddick-Lane provided medical services at the prison pursuant to the CMS contract. Nurse Adesomo is not an employee of CMS, and service has not been accepted on her behalf. The court's analysis of the claims against the medical defendants would apply to Nurse Adesomo as well.

32-36.

On December 14, 2005, Reddick-Lane examined plaintiff. "My assessment was that Cooper had HTN [5] and arthropathy. My plan was to continue his current medication regimen and obtain an x-ray of his right wrist and left shoulder. I also increased Cooper's Tylenol to two tablets three times a day for one month." Med. Ex. A ¶ 10, Med. Ex. B pp. 9, 36.

On December 25, 2005, plaintiff submitted a sick call request complaining of seeing flashes of white light, not receiving petrolatum for dry lip and requesting to have his blood pressure taken "properly" with his arm extended. Plaintiff was given A & D ointment for his dry lips and advised to take his medications as prescribed and to restrict salt intake. Med. Ex. B p.10. Dr. Reddick-Lane attests that "[i]t is not necessary" for the "arm to be extended to get an accurate BP measurement." Med. Ex. A ¶ 11.

On December 31, 2005, plaintiff filed another Informal Inmate Complaint, stating he did not receive his evening hypertension medicine on December 30, 2005. His allegation was later investigated and determined untrue. Med. Ex. B pp. 11, 35-36.

On December 31, 2005, Plaintiff was brought to the dispensary complaining of chest pain and numbness in his fingers. His pulse and respiratory rate were within normal limits and his blood pressure was 141/98. Plaintiff's circulation to his fingers was normal. Twenty minutes later, plaintiff appeared relaxed with no signs of distress, and was returned to his housing unit. Med. Ex. B p. 12. He was instructed to return to the dispensary if needed. *See id.*

On January 4, 2006, plaintiff submitted a sick call slip complaining, *inter alia,* of finger numbness and untimely delivery of his blood pressure medication. Physical examination revealed

---

[5]The abbreviation refers to hypertension.

no apparent distress. Plaintiff was referred to Dr. Reddick-Lane for evaluation. Med. Ex. B p.13.

On January 8, 2006, plaintiff went to the dispensary complaining of chest pain since "last night" and he stated he had not received his medication. Med. Ex. B p.14. According to Dr. Reddick-Lane, Cooper's MARS showed that he received his medication on the evening of January 7, 2006.  Med. Ex. A.¶ 15. Plaintiff did not appear in distress and was evaluated, and returned to his housing unit.  Med. Ex. B pp. 14, 37

On January 14, 2006, plaintiff submitted a sick call request complaining of numbness in the fingers of his left hand and carpal tunnel syndrome. He complained of untimely administration of his blood pressure medication and being cuffed from behind his back.  Med. Ex. B pp. 15-16.  On January 20, 2006, when Dr. Reddick-Lane examined plaintiff, he stated that he had been diagnosed with carpal tunnel syndrome in 2005.  He also complained of left shoulder discomfort.  *See id.* Dr. Reddick-Lane noted that Cooper was wearing a wrist splint. *See id.* Examination revealed normal left hand circulation, grip and pulses, but decreased sensation in the fourth and fifth digits. "My assessment was that Cooper had ulnar nerve irritation, left shoulder arthropathy, and HTN. I advised him to continue wearing the splint, and I ordered a left shoulder x-ray." Med. Ex.  A  ¶ 16,  Med. Ex. B pp. 15-16, 29.

On February 15, 2006, James St. Amant, MCAC Administrator for the Baltimore region, found no merit to Cooper's ARP concerning the proper administration of his medications. Med. Ex. B pp. 18, 39-40.  St. Amant notified MCAC  ARP Coordinator, Corporal S. Jefferson that medical records demonstrated that Plaintiff had received all scheduled medications. *See id.*

On March 8, 2006, plaintiff submitted a sick call slip complaining of pain throughout his body after allegedly being "manhandled" on February 15, 2006. Med. Ex. B p. 19; *see supra  note*

3. Plaintiff was referred to Dr. Reddick-Lane, who examined him on March 15, 2006. At that time, plaintiff complained of an improper dosing schedule for his blood pressure medication. Med. Ex. B pp. 19-20. Dr. Reddick-Lane's assessment found: HTN; bilateral knee arthralgias (joint pain); and left shoulder arthralgia. She adjusted Cooper's HTN medications and ordered an x-ray of plaintiff's knees and left shoulder. Med. Ex. A ¶ 18, Med. Ex. B pp. 19-20, 21, 31, 41-42. On April 28, 2006, x-rays were taken of both plaintiff's shoulder and knees. The x-rays revealed no bony abnormalities. Med. Ex. B at 21.

Plaintiff submitted sick call slips on March 19, 2006, and March 24, 2006. Med. Ex. B at 22, 23. When examined on March 24, 2006, plaintiff complained about the delay in responding to his sick call requests, thick skin on his toes, and being cuffed from behind. Med. Ex. B pp. 23, 24. Plaintiff was scheduled for the Chronic Care Clinic on the next available date. Med. Ex. B p. 24.

On March 31, 2006, Dr. Reddick-Lane wrote a note to MCAC personnel stating that she had reviewed plaintiff's chart and found no x-ray or magnetic resonance imaging reports to support a handcuffing restriction.[6] Med. Ex. A ¶ 21, Med. Ex. B p. 25. Further, she noted that x-rays showed no deformities that "would cause such limitations." Med. Ex. A ¶ 21.

On April 7, 2006, blood tests showed Cooper's kidney function was normal. Med. Ex. A ¶ 22, Med. Ex. B p. 26. Plaintiff alleges submitting sick call requests on February 17, 20, and 25, 2006, but was not evaluated. According to Dr. Reddick-Lane, no February sick call requests are listed in plaintiff's chart. Med. Ex. A ¶ 23.

Plaintiff filed sick call requests on March 8, 18, and 24, 2006. He was examined on March

---

[6]Sometime in March 2006, Dr. Reddick-Lane was transferred from MCAC to the Central Booking Facility.

15, and 24, 2006. Med. Ex. A ¶ 23. Med. Ex. B pp. 19-20; 22-23.

In her affidavit, Dr. Reddick-Lane states: "Cooper also alleges that, in a meeting, I made a false statement which caused him to be manhandled by the prison staff. I do not recall ever having a meeting with anyone about Cooper, and I certainly made no statement that would lead to him being mistreated." Med. Ex. A ¶ 24.

B. State Defendants

The state defendants' exhibits show that on January 15, 2006, a notice of infraction was served on plaintiff for refusing to be handcuffed from behind. State Ex. 3 pp. 1-9 At the subsequent disciplinary hearing, plaintiff testified that he has suffered since July 2003 from a medical condition that prevents him from being cuffed from behind. He presented a medical assignment sheet signed by "J. Moss, PAC," dated June 29, 2005, that indicated "cuff in front x 1 yr." Plaintiff Ex. No. 1-2; State Ex. 3 p. 3-4.

The hearing officer reviewed plaintiff's base file and found no documentation concerning handcuffing restrictions. State Ex. 3 pp. 3-6. The hearing officer also reviewed plaintiff's medical records, finding no evidence that plaintiff had been seen by J. Moss, physician's assistant, on June 29, 2005. *See id.* He questioned the validity of the medical assignment sheet presented by plaintiff, noting a disparity between the P.A. Moss's signatures on original medical records and his signature on the sheet produced by plaintiff. State Ex. 3 p. 4. The hearing officer found plaintiff guilty of a rule violation and recommended a "council reprimand." State Ex. 3 pp. 5-7. He was not sanctioned with a loss of good conduct time. State Ex. 3 p. 5. The Warden affirmed the hearing officer's recommendation. State Ex. 3 p. 8.

III. Standard of Review

Fed. R. Civ. P. 56(c) provides that:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

IV.  Analysis

    A.  Claims Against Medical Defendants

To state a constitutional claim under the Eighth Amendment for denial of medical care a prisoner must demonstrate that the defendant's acts or omissions amounted to deliberate indifference to his serious medical needs. *See Estelle v. Gamble,* 429 U.S. 97, 106 (1976). In essence, the treatment rendered must be so grossly incompetent or inadequate as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Id.* at 851. Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U. S. 825, 837 (1994). Thus, a health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. *See Johnson v. Quinones,* 145 F.3d 164, 168 (4th Cir. 1998). Furthermore, mere negligence or malpractice does not rise to a constitutional level. *See Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986). Generally, a prisoner's disagreement with medical personnel over the course of his treatment does not support a constitutional claim. *See Wright v. Collins*, 766 F. 2d 841, 849 (4th Cir. 1985).

The record shows indisputably that plaintiff's many medical concerns were addressed by medical personnel. Plaintiff's complaints regarding proper dosing and delivery of medication were investigated and found without merit. Dr. Reddick-Lane reviewed plaintiff's medical files, ordered x-rays and found no evidence to substantiate his medical allegations concerning handcuffing restrictions. Plaintiff's complaints for hypertension, joint pain, and chest pain were addressed and treated as deemed appropriate by medical providers. Under the undisputed facts presented here,

plaintiff fails to demonstrate that the medical defendants' acts or omissions amounted to deliberate indifference to his serious medical needs. This claim lacks factual or legal merit, and summary judgment in favor of the medical defendants will be granted by separate order.

    B.   Claims Against State Defendants

An inmate has a liberty interest in good time credit and may not be deprived of that credit without due process of law. *See Wolff v. McDonnell*, 418 U.S. 539 (1974). The Due Process Clause requires that prison disciplinary proceedings which deprive an inmate of good time credit must include: (1) advanced written notice of the alleged violation; (2) an opportunity for the inmate to call witnesses and present documentary evidence; (3) "a written statement of the fact finders as to the evidence relied upon and the reasons for the disciplinary action;" and 4) "some evidence" in support of the decision by the prison disciplinary board. *See Superintendent Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454-55 (1986); *Wolff*, 418 U.S. at 557. Plaintiff neither alleges, nor does the record suggest, that his disciplinary proceedings were deficient in any of these respects. Furthermore, plaintiff's punishment was a council reprimand, without any loss of good conduct time.[7]

To the extent plaintiff faults state defendants for handcuffing him from behind, his claim lacks merit. Plaintiff's copy of a purported medical note restricting handcuffing cannot be verified in his base file. As previously noted, the hearing officer questioned the authenticity of the medical provider's signature on the form. Further, medical personnel found no evidence after examination and x-ray studies to warrant a handcuffing restriction. In sum, defendants are entitled to judgment

---

[7]Plaintiff's accusation that the disciplinary proceeding was based on fabricated testimony does not state a substantive due process claim. *See, e.g., Freeman v. Rideout*, 808 F. 2d 949, 953 (2nd Cir. 1986); *see also Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va 1980) (stating "court does not sit to review the factual findings of prison disciplinary committees").

on this claim.

V.	Conclusion

For the reasons stated above, the court will grant the motions for summary judgment and enter judgment in favor defendants against plaintiff.


Filed: January 19, 2007                                         /s/                                    
                                                        Andre M. Davis
                                                        United States District Judge